UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANE R. MERCURI,

        Plaintiff,

v.                                     Case No.  8:11-CV-01712-T-23AEP

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Dane R. Mercuri, the Plaintiff in this case, seeks judicial review of the denial of his claim for a period of disability, Disability Insurance Benefits, and Supplement Security Income. Because the Commissioner of Social Security's decision was based on substantial evidence and employed proper legal standards, the Court recommends that the decision be affirmed.

### I.

**1.      Procedural Background**

In March 2007, the Plaintiff filed applications for supplemental security income, a period of disability and disability insurance benefits, alleging an onset of disability of July 1, 2005 (Tr. 39, 102). The Plaintiff's applications were denied initially and upon reconsideration (Tr. 45-48). In an October 5, 2009 hearing decision (the "Decision"), administrative law judge Dores D. McDonnell, Sr. (the "ALJ") found that the Plaintiff was not disabled (Tr. 32-35). On May 27,

2011, the Appeals Council denied the Plaintiff's request for review (Tr. 1-5). The Plaintiff seeks review of the ALJ's Decision pursuant to 42 U.S.C. §§ 405(g), 1383(c).

### 2.     Factual Background and the ALJ's Decision

The Plaintiff was forty-five (45) years old as of his July 1, 2005 alleged onset date and had at least a high school education and was able to communicate in English (Tr. 47). The Plaintiff had past relevant work experience as a construction worker and tractor trailer driver (Tr. 47). After a careful evaluation of all the evidence of record, the ALJ found that the Plaintiff had the severe impairments of a history of lower gastrointestinal problems characterized by colitis, abdominal pain, gastric ulcers, and rectal bleeding; a history of hernia operations; and atypical chest pain with mitral valve prolapse (Tr. 41, Finding No. 3). The ALJ noted that the Plaintiff also complained of bipolar disorder, but determined this was not a severe impairment (Tr. 43-45). At step three of the sequential evaluation, the ALJ determined that the Plaintiff did not have an impairment or combination of impairments that met or equaled a Listing (Tr. 45, Finding No. 4). At step four of her assessment, the ALJ found that the Plaintiff had the residual functional capacity ("RFC") to do a full range of medium work (Tr. 46, Finding No. 5). Based on this RFC determination, the ALJ concluded that the Plaintiff could not return to his past relevant work. However, based on the Medical-Vocational Guidelines, the ALJ found that the Plaintiff was able to perform other work that existed in significant numbers in the national economy (Tr. 47-48, Finding Nos. 6, 10). Thus, the ALJ found that the Plaintiff was not disabled (Tr. 48, Finding No. 11).

## II.

In order to be entitled to SSI, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id*. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 1035 (2005). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994), *citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

3

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).[1]  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The ALJ, in part, decided the Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims.  *See* 20 C.F.R. §§ 404.1501, *et seq.*  These Regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment, but may not be severe enough to prevent him from engaging in other substantial gainful activity.  In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled.  These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids."  *Id.* § 404, Subpart P, App. 2.  If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled.  *Id.* §

---

[1]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

404.1569. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. *Id.* § 404.1569a.

Thus, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

The Plaintiff challenges the ALJ's Decision on five grounds:

(1)     The ALJ erred in the evaluation of whether the Plaintiff's bipolar disorder was severe and in assessing the medical opinions regarding severity;

(2)     The ALJ erred in the evaluation of whether the Plaintiff's personality disorder was severe and in assessing the medical opinions regarding severity;

(3)     The ALJ erred in the evaluation of whether the Plaintiff failed to follow treatment;

(4)     The ALJ erred in the evaluation of symptoms; and

(5)     The ALJ erred in not considering the effects of nonexertional limitations in making the assessment of the residual functional capacity.

For the reasons discussed below, the Court finds that the ALJ's Decision was based on substantial evidence and comported with applicable legal standards.

1.      **Whether the ALJ erred in the evaluation of whether the Plaintiff's bipolar disorder was severe and in assessing the medical opinions regarding severity**

The Plaintiff first argues that the ALJ erred in her analysis of the Plaintiff's bipolar disorder.  At step two, the ALJ must determine whether the claimant has a severe impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii).  By its own terms, the evaluation at step two is a *de minimis* test intended to weed out the most minor of impairments.  *See Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987); *Augusto v. Comm'r of Soc. Sec.*, Case No. 6:06-cv-1889-Orl-DAB, 2008 WL 186541 at *5 (M.D. Fla. Jan. 18, 2008) ("The 'severe' impairment threshold of *step two* is a *de minimis* hurdle ... employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint.") (quotations and citations omitted).  "At step two of the sequential evaluation the ALJ is required only to determine whether there is any severe impairment before proceeding with the next step in the sequential evaluation.  Thus, a finding of any severe impairment is enough to satisfy the requirements of step two." *Lawson v. Astrue*, Case No. 5:09-cv-23-Oc-GRJ, 2009 WL 3617794 at *6 (M.D. Fla. Nov. 2, 2009).

With regard to determining the severity of a mental impairment, such as bipolar disorder, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations that deal specifically with mental impairments—otherwise known as the "special technique." *See* 20 C.F.R. § 416.920a.  This "special technique" requires the ALJ to evaluate the pertinent signs, symptoms, and laboratory findings contained within the case record in order to determine whether a mental impairment exists.  20 C.F.R. § 416.920a(b)(1).  If a mental impairment is found, the ALJ must analyze whether certain medical findings relevant to the

claimant's ability to work are present or absent.  20 C.F.R. § 416.920a(b).  The ALJ must then

rate the degree of functional loss resulting from the impairment in certain areas deemed essential

for work.  20 C.F.R. § 416.920a(d). These areas are: (1) activities of daily living; (2) social

functioning; (3) concentration, persistence, or pace; and (4) deterioration or decompensation in

work or work-like settings. 20 C.F.R. § 416.920a(c)(3).  The Social Security Regulations provide

as follows:

> When we [the SSA] rate the degree of limitation in the first three functional areas
> (activities of daily living; social functioning; and concentration, persistence, or pace),
> we: None, mild, mod will use the following five-point scale erate, marked, and extreme.
> When we rate the degree of limitation in the fourth functional area (episodes of
> decompensation), we will use the following four-point scale: None, one or two, three,
> four or more. The last point on each scale represents a degree of limitation that is
> incompatible with the ability to do any gainful activity. If we rate the degree of your
> limitation in the first three functional areas as "none" or "mild" and "none" in the fourth
> area, we will generally conclude that your impairment(s) is not severe....

20 C.F.R. § 416.920a(c)(4), (d)(1).

An ALJ's evaluations regarding the degree of functional loss in the four aforementioned

areas of function must be incorporated into his or her findings and conclusions. *Moore v.

Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir.2005). "Where a claimant has presented a colorable

claim of mental impairment, the social security regulations require the ALJ to complete a PRTF

[Psychological Review Technique Form] and append it to the decision, or incorporate its mode

of analysis into his findings and conclusions" *Id*. at 1214.

Here, the ALJ considered the four broad functional areas in evaluating the Plaintiff's

bipolar disorder.  Specifically, the ALJ found that the Plaintiff had no limitation in activities of

daily living, mild limitations in social functioning, mild limitations in concentration, persistence,

or pace, and no episodes of decompensation.  (Tr. 43-44.)  The Plaintiff challenges the ALJ's evaluation of the first three categories of functioning, arguing that the ALJ erred by improperly discounting the opinion of Dr. Karl D. Jones, the Plaintiff's treating psychiatrist.  In an August 21, 2009 medical report, Dr. Jones found that the Plaintiff had marked impairments in activities of daily living and social functioning.  (Tr. 689.)  The opinion of a treating physician, "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)).  The Eleventh Circuit "has concluded 'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Id*.  "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons."  *Id*. (internal citations omitted).  Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997).  Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error.  20 C.F.R. § 404.1527(d)(2)*; MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985) (noting that a treating physician's opinion is entitled to more weight than a non-treating physician).

In analyzing the four functional areas, the ALJ briefly discussed Dr. Jones's findings as to each individual area, but then broadly concluded that Dr. Jones's findings should be afforded

8

"little weight." (Tr. 44-5.) According to the ALJ, the "course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported." (Tr. 45.) In coming to this conclusion, the ALJ determined that the "doctor's report appears to contain inconsistencies, and the doctor's opinion is accordingly rendered less persuasive." (Tr. 44.) The ALJ noted that a "review of Dr. Jones' treatment notes from 2006-2009 show that at no time during his treatment of the claimant did Dr. Jones describe him as 'angry,' 'hostile,' or 'inappropriate,'" and "[i]n fact, in the six appointments the claimant had, Dr. Jones described his behavior as 'appropriate' in four of them and merely 'hyperactive' and 'restless' in the others." (Tr. 44.) In addition, the ALJ cited to a function report filled out by the Plaintiff's mother, and the medical opinions of Dr. Martha Putney and Dr. Art Hamlin in demonstrating conflicting accounts of the Plaintiff's functional abilities. (Tr. 44.) Finally, the ALJ noted that if the Plaintiff "truly had a 'marked' impairment in the three functional areas described by Dr. Jones, the claimant would likely have repeated episodes of decompensation of extended duration, of which there is no evidence in the record." (Tr. 45.) In light of the internal inconsistencies within Dr. Jones's findings, as well as the inconsistencies with other medical evidence on record as well as other evidence on record, including the Plaintiff's mother's functional report, it is clear that the ALJ had good cause to afford Dr. Jones's opinion "little weight." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1 (11th Cir. 2004).

The Plaintiff also argues that the ALJ erred by not addressing Dr. Jones's reports indicating that the Plaintiff suffered from an impairment in concentration, persistence, and pace. (Dkt. No. 11 at 12.) Specifically, the Plaintiff asserts that "Dr. Jones found Mr. Mercuri

invariably to have pressured speech, and found his mood labile and anxious, his affect blunted, his though process scattered, and his insight and judgment impaired." (Dkt. No. 11 at 12.) Despite these claims, unlike the previous two categories of functioning, Dr. Jones did not find a marked or severe limitation in concentration, persistence, and pace. Further, at other times in his medical opinions, Dr. Jones found that the Plaintiff's behavior was appropriate, his speech was normal, his affect was appropriate, his thought process was appropriate, his insight/judgment was average, his memory was intact, and he was oriented as to time, person, and place. (Tr. 338.) The ALJ found additional inconsistencies with Dr. Jones's opinions as evidenced by the Plaintiff's testimony at the Hearing (admitting that he is a "pretty organized person") and the Plaintiff's mother's function report (noting that the Plaintiff pays his own bills, counts change, handles a savings account, and uses a checkbook). (Tr. 44.) After reviewing the medical evidence on record, the Court finds that the ALJ's Decision regarding the Plaintiff's alleged bipolar disorder is based on substantial evidence. Thus, the Plaintiff's first argument is without merit.

>    2.    **Whether the ALJ erred in the evaluation of whether the Plaintiff's personality disorder was severe and in assessing the medical opinions regarding severity**

Next, the Plaintiff argues that the ALJ erred by ignoring Dr. Jones's diagnoses of personality disorder in determining the Plaintiff's severe impairments. The Plaintiff contends that "the diagnostic opinion of Dr. Jones is sufficient to support a finding of a severe personality disorder" and the ALJ committed reversible error in failing to incorporate this diagnosis into his Decision. (Dkt. No. 11 at 13.) As an initial matter, the Court notes the extreme difficulty it has had deciphering the unintelligible calligraphy that fills Dr. Jones's treatment notes. For instance,

in support of his assertion that Dr. Jones has "consistently diagnosed" the Plaintiff with "dependant personality disorder," the Plaintiff cites to a number of Dr. Jones's treatment notes from 2006 and 2007, which include impressions such as this one from November 2006:



(Tr. 338.)   Nowhere in these notes is the Court able to discern a diagnosis of "dependant personality disorder."   Nevertheless, even if the Court had identified such a diagnosis, the Eleventh Circuit has consistently found that a diagnosis alone is insufficient to support a finding of disability.   *See Moore v. Barnhart*, 405 F.3d 1208 (11th Cir.2005); *see also McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986).   Instead, "the severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."   *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986).   Since the Plaintiff has not directed the Court to medical evidence demonstrating the impact of the Plaintiff's alleged "dependant personality disorder" on his ability to work, the Court finds that the ALJ did not err in her step-two analysis of the Plaintiff's severe impairments.   Thus, the Plaintiff's second argument is without merit.

11

3.      **Whether the ALJ erred in the evaluation of whether the Plaintiff failed to follow treatment**

Next, the Plaintiff argues that the ALJ erred by improperly finding that the Plaintiff failed to follow treatment.  (Dkt. No. 11 at 13.)  Specifically, the ALJ stated in his Decision that the Plaintiff "has failed to cooperate with treatment and this neglect alone is a basis for denial under 404.1530 and 416.930 of regulations (Exhibit 17F, Pg. 4)."  (Tr. 47.)  While the ALJ has made clear that the failure to follow treatment is a basis for a finding of "not disabled" pursuant to the Social Security regulations, the ALJ did not base his Decision on this finding.  Instead, the ALJ found that, because the Plaintiff's bipolar disorder was not severe, the Plaintiff retained the RFC to perform the full range of medium work.  (Tr. 46.)  Based on this RFC determination, as well as the Plaintiff's age, education, and work experience, the ALJ consulted with the Grids, which directed a finding of "not disabled."  (Tr. 48.)  Since the Court has already found that the ALJ did not err in determining that the Plaintiff's bipolar disorder was not severe at step two, the Court is satisfied that the ALJ's Decision is based on substantial evidence.  Thus, any mistake regarding the ALJ's determination that the Plaintiff failed to follow treatment would be, at worst, harmless error.  Therefore, the Plaintiff's third argument is without merit.

4.      **Whether the ALJ erred in the evaluation of symptoms**

The Plaintiff next argues that the ALJ erred in evaluating the Plaintiff's subjective complaints regarding his "symptoms."  As an initial matter, the Court notes that the Plaintiff does not identify these symptoms or subjective complaints that the ALJ allegedly erred by improperly discrediting.  Instead, the Plaintiff asserts that "[t]he only reason given by the ALJ for

disregarding Mr. Mercuri's symptoms was that the ALJ found his bipolar impairment to not be severe." (Dkt. No. 11 at 14.) Presumably, the Plaintiff alleges that the ALJ's reasons for discrediting the Plaintiff's subjective complaints were legally insufficient. In his Decision, the ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 46.) In support of this credibility finding, the ALJ noted that she found the Plaintiff's bipolar disorder to be non-severe, and therefore found the Plaintiff's subjective complaints relating to the intensity of his symptoms to be not credible. (Tr. 47.)

In order to establish disability based on testimony of pain or other subjective symptoms, the claimant carries the burden of satisfying two parts of a three-part pain standard requiring: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). While there is certainly evidence of an underlying medical condition, namely bipolar disorder, the Plaintiff does not allege that the objective medical evidence either confirms the severity of the Plaintiff's subjective "symptoms"

13

or demonstrates that the Plaintiff's condition was of such severity as to reasonably expect to give rise to the alleged "symptoms." Further, by failing to identify the very symptoms that he alleges form the basis of his disability, the Court is left with the difficult task of attempting to craft the Plaintiff's argument for him. Nevertheless, since the Court has already found that the ALJ's conclusion regarding the severity of the Plaintiff's bipolar disorder was based on substantial evidence, the Court finds that the ALJ's credibility finding was similarly based on substantial evidence. The ALJ also noted that since the Plaintiff's "criminal conduct seem[ed] voluntary rather than impulsive ... his infractions alone should not be rewarded with the assumption that he does not know right from wrong." (Tr. 47.) The Plaintiff argues that this discussion amounted to the ALJ applying the M'Naghten test for determining criminal insanity as a basis for determining the severity of the Plaintiff's mental impairment. Contrary to the Plaintiff's assertions, the ALJ thoroughly reviewed all of the evidence on record in determining whether the Plaintiff was disabled, and did not, as the Plaintiff claims, apply the M'Naghten test in determining the Plaintiff's disability. Further, the Court finds that independent bases exist for the ALJ's discounting of the Plaintiff's testimony, namely the lack of objective medical evidence to support the severity of the Plaintiff's subjective complaints. The Plaintiff has not directed the Court to any particular piece of evidence on record that would conflict with the ALJ's application of the pain standard in this case. Therefore, the Plaintiff's fourth argument is without merit.

14

5.      **Whether the ALJ erred in not considering the effects of nonexertional limitation in making her RFC assessment**

Finally, the Plaintiff argues that the ALJ erred in failing to properly consider the Plaintiff's nonexertional limitations.   The Plaintiff asserts that "[e]very psychiatrist or psychologist who has evaluated Mr. Mercuri has noted that he has limitations in and impairments with interacting with the public, co-workers or others," and that the "ALJ committed additional error by failing to follow the regulation regarding consideration of all impairments, even those not considered to be 'severe.'" (Dkt. No. 11 at 15.)  "In the disability programs, a nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction.   Nonexertional impairments may or may not significantly narrow the range of work a person can do." Social Security Ruling 83-14, 1983 WL 31254 at *1 (S.S.A.1983). Nonexertional limitations affect a claimant's ability to meet the demands of jobs, other than strength demands. 20 C.F.R. § 404.1569a(c).  For example, difficulty functioning because of depression is classified as a nonexertional limitation.  *See id*.

Here, while the ALJ found that the Plaintiff's bipolar disorder was not a severe impairment, and the Court has already found that this finding was supported by substantial evidence, she still considered the Plaintiff's allegations of disabling mental symptoms due to this impairment in the subsequent steps of the sequential evaluation. (Tr. 46-7.) The ALJ thoroughly considered the Plaintiff's testimony, which she properly discounted, as well as his mental treatment records, including the opinion evidence from the Plaintiff's treating psychiatrist and the state agency reviewing psychiatrist. (Tr. 43-7.)  The record, as a whole, provides substantial

15

evidence to support the ALJ's conclusions at steps two and four that the Plaintiff did not suffer from a severe nonexertional impairment that would affect his ability to work.  Further, since these conclusions were supported by substantial evidence, the ALJ did not commit error in her reliance on the Grids.  *See Perry v. Astrue*, 280 Fed.Appx. 887, 893-96 (11th Cir.2008) (holding that at steps two and four the ALJ considered whether claimant's nonexertional limitations significantly affected his ability to do basic work skills and, therefore, the ALJ did not err by utilizing the Grids).  Thus, the Plaintiff's fifth argument is without merit.

## IV.

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that:

(1)     The decision of the Commissioner be **AFFIRMED**; and

(2)     The Clerk of Court be directed to enter final judgment in favor of the Commissioner and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on this 21st day of August, 2012.


_____
ANTHONY E. PORCELLI
United States Magistrate Judge


## NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on

16

the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Hon. Steven D. Merryday

Counsel of Record